UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIA WHITE,<br><br>        Plaintiff,<br><br>v.<br><br>ANTHOLOGY, INC.,<br><br>        Defendant. | No. 08 C 1371<br><br>Judge Kennelly<br>Magistrate Judge Mason |

**PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER
OF LAW AND FOR A NEW TRIAL IN THE ALTERNATIVE**

Plaintiff, by and through her attorneys, Caffarelli & Siegel Ltd., hereby moves this Court for a judgment as a matter of law under Fed. R. Civ. P. 50(b), and for a new trial under Fed. R. Civ. P. 59(a) in the alternative to a judgment as a matter of law. A judgment as a matter of law is warranted because of Defendant's failure to return Plaintiff's job duties to her or otherwise transfer her to an equivalent position after instructing her to return to work. In the alternative, a new trial is warranted based upon (1) the admission, over Plaintiff's objections, of her separation agreement and Defendant's unduly prejudicial use of same to portray her as greedy and frivolous and despite the parties' stipulation as to damages, rendering the agreement irrelevant, combined with (2) Defendant's perjury at trial as to at least two material issues, in addition to (3) the verdict generally being against the manifest weight of the evidence.

**A.  Judgment as a Matter of Law in Favor of Plaintiff is Warranted Based Upon the Defendant's Instruction to Plaintiff that she Return to Work and Subsequent Failure to Restore her Job Duties or Place Her in an Equivalent Position.**

In the instant matter, it is undisputed that Defendant instructed Plaintiff to return to work at the conclusion of her FMLA leave. Even though Defendant claims that the decision to eliminate Plaintiff's position had been made prior to her FMLA leave, and that the position was

actually eliminated in a November 2007 budget meeting, it sent her a letter dated December 12, 2007 instructing her to returning to work. (See Pl. Ex. 1.) Plaintiff then returned to work and worked for a period of several days prior to her termination, but not within the same or equivalent position as the one she held before her FMLA leave as demonstrated by the fact that she was locked out of accessing Defendant's computer system.

In denying Plaintiff's Rule 50(a) Motion for Judgment as a Matter of Law in conjunction with ruling on the final jury instructions, the Court concluded that employers should not be "stuck" with employees where the employer had already eliminated the position but simply chose not to inform the employee at that time on the basis that it had a benevolent motive in not wanting to convey bad news during the employee's recovery. For the reasons stated below, Plaintiff respectfully requests that the Court reconsider its position and grant judgment as a matter of law in her favor.

The elements of an FMLA interference claim are straightforward:

> [T]he employee must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.

Burnett v. LFW, Inc., 472, F.3d 471, 477 (7th Cir. 2006).[1] The only element in dispute in this case is the fifth element. Under the FMLA, "benefits to which he was entitled" includes reinstatement upon return from leave, as follows:

> Except as provided in subsection (b) of this section [relating to key employees], any eligible employee who takes leave . . . shall be entitled, on return from such leave – (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

---

[1] The Proposed Seventh Circuit Pattern FMLA Jury Instructions are similarly straightforward.

28 U.S.C. § 2614(a)(1).  For purposes of an FMLA interference claim, an employer's motive must not be considered in light of the fact that the FMLA is an entitlement statute.  Burnett, 472 F.3d at 477.  "To prevail on an FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required."  Id.

In defense of Plaintiff's claim of FMLA interference, Anthology claims that it would have laid off Julia White during the time she was on FMLA leave even if she had not taken leave, and specifically cites 28 U.S.C. § 2614(a)(3).  This section states that an employee is not entitled to any right, benefit or position other than that to which he or she would not have been entitled had he or she not taken leave.  The language has been interpreted to mean that an employer has the ability to move forward with any layoff, termination, etc. that it would have carried out whether or not the employee took FMLA leave.  See, e.g., Rice v. Sunrise Express, 209 F.3d 1008, 1017-18 (7th Cir.[YEAR]), cert. denied, 531 U.S. 1012 (2000).  At issue here, however, is whether Defendant's letter instructing Julia White to return to work, promising her that she will be reinstated to her previous position or an equivalent one, and actually allowing her to return to work for a period of several days, negates this defense as a matter of law.

First, reading the relevant regulations in conjunction with the statutory language supports a judgment as a matter of law in favor of Julia White.  The most applicable regulations interpreting Anthology's defense are located at 29 C.F.R. § 825.216 and 29 C.F.R. § 825.312(d).  Both regulations discuss an employer's right to deny "reinstatement" or "restoration of employment" to such employees – as opposed to a right to terminate upon return.  Both imply that the mechanism for communicating such denial takes place either when the layoff or termination would have been carried out had the employee not taken FMLA leave, or "<u>at the time reinstatement is requested</u>," i.e., before the employee is reinstated.  29 C.F.R. § 825.216(a)

3

(emphasis added). Moreover, the regulations specifically state that re-employment <u>automatically</u> triggers certain FMLA rights, notwithstanding an employer's claim that a position has been eliminated. <u>See</u> 29 C.F.R. § 825.312(d)(stating that an employee is "<u>immediately entitled</u>" to further FMLA leave if he or she "is recalled or otherwise re-employed" – and thus implying that the act of re-employment is what automatically triggers FMLA rights generally, including the right to reemployment, in the context of a paragraph governing the circumstances under which is able to deny such re-employment) (emphasis added).

Second, the relevant case law also supports a judgment as a matter of law in favor of Julia White. Plaintiff's position is articulated best in the case of <u>Nocella v. Basement Experts of Am.</u>, 499 F. Supp 2d. 935, 941 (N.D. Ohio 2007), to which the facts in this case closely resemble. In <u>Nocella</u>, 499 F. Supp 2d. at 941, defendants allegedly eliminate plaintiff's position during her FMLA leave. Nonetheless, they still instruct plaintiff to return to work after her FMLA leave period. <u>Id.</u> In <u>Nocella</u>, the plaintiff indeed returned for one week. <u>Id.</u> at 938-39. As such, the court determined that because she was asked to and actually did return to work, "[p]laintiff was neither fired nor laid off; her job title was merely eliminated, [and] [d]efendants were therefore never relieved of their duty to reinstate [p]laintiff to an equivalent position." <u>Id.</u> at 941. The <u>Nocella</u> court did not refer to a factfinder needing to determine if and when the employee would have been laid off – it referred to the employer's statutory <u>duty,</u> once the employee actually returned to work, to reinstate her. The cases cited by Defendant during the final jury instruction conference all share the same flaw. Specifically, unlike Julia White and the plaintiff in <u>Nocella</u>, the employees in Defendant's cases were never asked to return to work or actually returned to work – they were informed about their termination <u>before</u> they could return to work.

Third, Anthology should be barred from asserting the layoff defense under the doctrine of equitable estoppel, based upon the evidence adduced at trial. By sending Julia White a letter instructing her to come back to work, not communicating to her that her position had been eliminated, and in light of the fact that Julia White relied to her detriment on that letter by not searching for other employment, Anthology should be equitably estopped from taking the position that it is not obligated to reinstate Julia White because her position had been eliminated. The Seventh Circuit has held that the doctrine could be applied in FMLA cases under certain circumstances. Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir. 2000). Other circuits have specifically held that the doctrine applies to an FMLA claim brought by an employee whose employer misinformed her about her FMLA eligibility. Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352, 358 (5th Cir. 2006); Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 493-94 (8th Cir.2002); Kosakow v. New Rochelle Radiology Assocs., 274 F.3d 706, 723-25 (2nd Cir. 2001). It is not necessary to plead equitable estoppel, since the doctrine is by its nature a "defense to a defense." Center Ice of DuPage, Inc. v. Burley's Rink Supply, Inc., No. 96 C 5537, 1997 WL 534256 at *4 (N.D. Ill., Aug. 20, 1997).

Fourth, the statutory intent warrants a judgment as a matter of law in favor of Julia White. In ruling on the jury instructions, the Court observed that it likely was not Congress' intent that an employer be "stuck" with an employee that it brings back to work for a period before informing the employee that her position has been eliminated. If anything, Congressional intent warrants the opposite conclusion. The stated purpose of the FMLA, ad nauseum, was to protect vulnerable employees, not employers. This intent is revealed succinctly by President Clinton's public statement when signing the FMLA into law:

> Today, I am pleased to sign into law H.R. 1, the 'Family and Medical Leave Act of 1993.' I believe that this legislation is a response to a

5

> compelling need – the need of the American family for flexibility in the workplace. American workers will no longer have to choose between the job they need and the family they love.

William Jefferson Clinton, <u>FMLA Signing Statement</u> (1993). Further, in the preamble to the actual statute, Congress stated its findings, among other things, that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). There is no risk that small or unwitting employers will fall into a trap because the FMLA only applies to large employers, with over 50 employees. As such, any analysis of Congressional intent warrants a finding in favor of Julia White.

Fifth, public policy counsels in favor of granting the instant motion as well as the accompanying Fed. R. Civ. P. 60(b)(3) motion. Employees should be given the certainty of knowing that if they are not informed that they have been terminated, they are asked to return to work, and they actually do return to work, that a job will be there waiting for them. Employees should have the opportunity to search for a new job when their positions are eliminated – to take their own futures in their own hands and not be subject to the paternalistic whims of their employer, no matter how benevolent. Rather than the employer being "stuck" with an employee that they request to return to work, it is the employee who becomes "stuck" at home for a period of up to three months, when she could be searching for a job, not knowing that her position has been eliminated. Again, an employer's motive (and thus its benevolence) is irrelevant for purposes of an FMLA interference claim. <u>Burnett</u>, 472 F.3d at 477.

Finally, not granting a judgment as a matter of law under the circumstances of this case creates a gray area of uncertainty for employers and employees in an area of the law, employee relations, where certainty is favored. If it is indeed acceptable for an employer to bring an employee back to work for three days while continuing to rely on the defense that the

employee's position has been eliminated, what about ten days? What about two months? What about a year? When taken to its logical conclusion, therefore, Defendant's argument in this regard does not make sense. Surely, it would be preposterous and inconsistent for an employer to argue a year after an employee returns to work that her position has been eliminated and she would have been terminated during her FMLA leave.

The FMLA should be interpreted in such a way that inspires confidence and certainty among both employers and employees, similar to the Fair Labor Standards Act ("FLSA"), after which the FMLA's language is modeled. The FLSA establishes floors that must be met with regard to minimum wages and overtime, regardless of an employer's benevolence or intent. The FMLA's legislative history states that the Act "fits squarely within the tradition of the labor standards laws that ... preceded it," such as the FLSA. S. Rep. No. 103-3, at 5 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 7. The FMLA, following the FLSA model, also provides a "minimum floor of protection" for employees. Id. at 18. Every day, across the country, thousands of employees are terminated or have legitimate legal claims denied because they unwittingly file a medical certification one day late, or unknowingly file an EEOC claim one day late, or don't understand the consequences of filing an otherwise legitimate lawsuit one day late – and there is no public outcry about how they are "stuck" with the consequences. There are deadlines and deadlines must be met – this rule should apply to employers equally. Thus, the public benefit of employee certainty counsels in favor of granting this motion.

**B.     A New Trial is warranted because the Trial was Not Fair to Plaintiff in Light of Grant Miller's Perjury, the Wrongful Admission of Plaintiff's Separation Agreement, and because the Verdict is Against the Weight of the Evidence.**

A "new trial may be granted where the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." Fed. R. Civ. P. 59; see also Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1367

(7th Cir.1996). A new trial may also be ordered when a court erred in admitting evidence, such that a party's substantial rights were violated. Naeem v. McKesson Drug Co., 444 F.3d 593, 608-09 (7th Cir. 2006). Because the trial judge is uniquely situated to rule on a motion for a new trial given that he has presided over the proceedings, the Court has wide discretion to determine whether to order a new trial. Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems, 428 F.3d 706 (7th Cir. 2005).

1.   **Grant Miller's Fraudulent Testimony.**

For all the reasons articulated in Plaintiff's Rule 60(b)(3) Motion for Relief from Judgment, Grant Miller's fraudulent testimony that Julia White's direct comparator, Cheryl Born, had not received a pay raise in September 2007, along with his response of "absolutely not" to a juror's question whether there were any Anthology employees currently employed at R.R. Donnelley, resulted in the trial not being fair to Julia White for purposes of Rule 59. The false testimony that Cheryl Born had not received a pay raise went to the heart of White's interference and retaliation claims on the pay raise issue and eviscerated them, as described in the Companion Rule 60(b)(3) motion. Defense counsel later relied on that false testimony to highlight the purported ridiculousness of Plaintiff's pay raise claim to the jury in closing arguments, falsely claiming that the Plaintiff was bringing a claim for $6 and change. Such argument was unduly prejudicial and irrelevant, when in fact the parties had stipulated to over $189,000 in damages (without attorneys' fees and costs) in the pretrial order.

Plaintiff and her counsel at the time were completely unaware of the falsity of Grant Miller's testimony at the time he gave it, despite their diligent efforts. During discovery, the Defendant at no point alleged that Born had not received the pay raise, and it plainly appeared from Joint Exhibit 3, the e-mail containing instructions for processing pay raises for White and Born, that she had. The issue had not been specifically identified at the time of Born's

8

deposition, and Plaintiff was unable to follow up with her after discovery had closed, given Defendant's apparent control over her and her seeming hostility to Plaintiff during the discovery process. That hostility was later explained by her Separation Agreement with the Defendant, which specifically required her "cooperation" with Anthology during the White lawsuit. Moreover, Cheryl Born had been wrongly identified as being represented by the Defendant's attorneys up to the date her actual deposition. Ms. Born's affidavit regarding the pay raise issue, along with her paystubs, are attached as Exhibit A. Ms. Aguilar's affidavit regarding the current employee issue is attached as Exhibit B.

### 2. Julia White's Separation Agreement.

In addition to Grant Miller's perjury at trial, a new trial is separately warranted based upon the admission of Plaintiff's separation agreement with R.R. Donnelley. See Def.'s Exhibit 2. When the basis of the motion for a new trial is an alleged error involving a matter within the discretion of the trial court, such as the court's evidentiary rulings or jury instructions, the trial court has wide discretion in ruling on the motion. Wagner v. Fair Acres Geriatric Ctr., 49 F.3d 1002, 1017 (3rd Cir. 1995). Here, Defendant successfully used the separation agreement to tar the Plaintiff as greedy and frivolous for having rejected it, despite it not being relevant to any issue in the case. Even assuming that the introduction of any evidence whatsoever concerning the separation agreement was proper, which it was not, White admitted having been offered a separation agreement and not signing it. As such, there was absolutely no need to introduce the document and its specific terms into evidence, as there would have been to impeach Plaintiff's credibility, had she denied signing it. The agreement thus lacked any semblance of probative value. Once in evidence, Defendant went through the terms of the agreement with a fine toothed comb, including $40,000 in separation pay, COBRA benefits, and more, to highlight Plaintiff's purported greed and portray the Defendant as generous.

9

At the same time, Plaintiff was "handcuffed" from arguing the legitimacy of damages to the jury, based upon the parties' stipulation as to damages and the Court's specific instruction to the jury not to consider the issue. In short, the admission of Plaintiff's rejected separation agreement resulted in extreme prejudice to her – particularly in light of the volume of evidence in her favor and the low hurdle permitted by the mixed-motive instruction. It is inconceivable that the jury would have returned the same verdict, particularly as to the mixed-motive retaliation claims, if it had not been privy to the terms of the proposed separation agreement and if it knew that Grant Miller had lied to them. As such, the prejudicial nature of the admission of the separation agreement and any evidence concerning that agreement greatly outweighed the probative value of such evidence, and it therefore should have been excluded.

### 3. The Verdict was Against the Manifest Weight of the Evidence.

Finally, the jury's verdict is against the manifest weight of the evidence. Here, there was no evidence that would have allowed the jury to conclude that the position actually had been eliminated, or that the job duties had been diminished from the time Julia White went out on FMLA leave to the time she returned. Marc Bartolone's admission that Deborah Cox was given Julia White's duties on an "interim" basis because Kathy Barber was too busy, coupled with Bartolone's statement that "it just made sense" to have Cox continue in that role "after a number of months," shows that <u>both the duties and position still existed at the time of Julia's return</u>. Bartolone admitted that there was still integration work to be done, and Carlberg's e-mail discussing Cox's usefulness in the integration supports that. Because the November 2007 reduction in force was not carried out until February 2008, the number of employees that existed at the time Plaintiff returned from FMLA leave was approximately the same number of employees that existed at the time she went out. The undisputed evidence also shows:

- Marc Bartolone contemplated eliminating the Plaintiff's position in June of 2007 and transferring her job duties to Kathy Barber sometime later that year, but had not yet done so as of the time Plaintiff went on FMLA leave in September 2007.

- At the time Plaintiff went out on FMLA leave, Defendant had not yet decided the exact date that Plaintiff's position would be eliminated.

- Bartolone made the final decision to eliminate Plaintiff's position at the November 2007 budget meeting, during the time Plaintiff was on leave.

- Plaintiff's job duties were given to Deborah Cox on an "interim" basis when Plaintiff went out on FMLA leave because Kathy Barber was "too busy."

- Cox continued to perform Plaintiff's job duties upon Plaintiff's return to work on December 27, 2007.

- There was no evidence that Plaintiff's job duties were in any way diminished from the time she went on FMLA leave to the time she returned to work on December 27, 2007. No major layoffs took place during that time period, so the number of employees upon Plaintiff's return was roughly equivalent to the number of employees when she went out on FMLA leave.

- Bartolone testified that after "a number of months," he believed that it "just made sense" to have Cox retain the Plaintiff's job duties.

- Plaintiff was not informed that her position was going to be eliminated until her termination on January 2, 2008. Bartolone indicated that he was "eliminating" the Plaintiff's position and that her job duties "would be distributed" to others.

- According to Bartolone, Plaintiff's FMLA leave "accelerated the integration of Anthology into the broader HR organization."

- Defendant mailed a letter to Plaintiff on or about December 12, 2007 instructing her to return to work on December 27, 2007.

- Plaintiff returned to work on December 27, 2007, worked two full days, was out for a holiday, and was not terminated until her third full day back to work.

- Although Plaintiff performed various tasks upon her return, she was frozen out of the Defendant's human resource systems and thus was not returned to the same or an equivalent position to the one she held just prior to her FMLA leave.

- Although Plaintiff was offered the opportunity to submit an application for a position in California, Bartolone did not consider transferring Plaintiff to any other equivalent position within R.R. Donnelley as required under the FMLA, even though Plaintiff was considered an R.R. Donnelley employee.

- At no time prior to her termination on January 2, 2008 was Plaintiff ever informed not to return to work or that her position had been eliminated. When she returned she was told that her position "would be" eliminated.

- There is no documentation specifically indicating that Defendant intended to eliminate Plaintiff's position prior to December 27, 2007.

- Every single Anthology employee except for the Plaintiff was provided with at least 60-days notice that his or her position was being eliminated.

- Plaintiff experienced problems receiving her final paychecks, evidencing that payroll did not anticipate her termination – and thus that the decision to terminate her had not been predetermined and that it had been made at the last minute.

- Carlberg sent an e-mail to Bartolone shortly before Plaintiff's return from FMLA expressing his concern about delays that could occur in the transfer of Plaintiff's job duties back to her upon her return from FMLA leave.

- Plaintiff's position and salary was included in the final 2008 budget. Since R.R. Donnelley is a public company it likely was a Sarbanes-Oxley violation not to correct the budget; and Bartolone's explanation that he did not change the budget because he believed that White and Born were "friends" is not credible.

- Plaintiff was sent by Bartolone to R.R. Donnelley training for purposes of integrating Anthology into R.R. Donnelley regularly up to and including the week that she needed to go on FMLA leave.

- The integration work was not done by the time Julia White returned from leave, as evidenced by Carlberg's e-mail regarding Deborah Cox.

WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests this Court grant a judgment as a matter of law to the Plaintiff, or a new trial under 59(a) in which evidence of her separation agreement would be excluded from the jury.

Dated: September 21, 2009                    Respectfully submitted,

Alejandro Caffarelli, #06239078
Bradley Manewith, #06280535          JULIA WHITE
Caffarelli & Siegel Ltd.
180 North Stetson Ste. 3150
Chicago, IL 60601
Tel. (312) 540-1230                          By: /s/ Alejandro Caffarelli
Fax (312) 540-1231                               Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he caused a copy of the attached, Plaintiff's Renewed Motion for Judgment as a Matter of law and for a New Trial in the Alternative, to be served upon the parties below by electronically filing with the Clerk of the U.S. District Court of the Northern District of Illinois on September 21, 2009.

Michael G. Cleveland
Mark L. Stolzenburg
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601

Courtesy copies delivered to chambers of Judge Kennelly on the same day via hand delivery.

/s/ Alejandro Caffarelli
Alejandro Caffarelli
Caffarelli & Siegel Ltd.
Two Prudential Plaza
180 N. Stetson, Suite 3150
Chicago, IL 60601